S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc. Mr. Wiggins is here for the appellate and Mr. Smith for the affiliate. When you're ready, Mr. Wiggins, you may begin. Mr. Wiggins is here for the affiliate. Good morning. Please record. I'm Steve Wiggins. I'm here for S & S Packing. We contend that the trial court was incorrect in interpreting certain PACA regulations. The court found that my client, S & S Packing, violated three PACA regulations. The first one that the court cited is 7 CFR 46.2Y1. Is that the one that applies to consignment arrangements? It is, Your Honor. Okay, so the court applied the wrong reg. That's your argument? Yes, sir. We argue that the court was incorrect in applying that regulation because it applies specifically to consignments. And in this case, no claim was ever made that my client, S & S Packing, engaged in any consignment sales. There was never any claim, never any proof of that fact. Rather, S & S sold the fruit, received payment for all of the fruit sold. No consignments. That regulation simply does not apply. The second specific regulation that the court cited is 7 CFR 46.19. And that's the one that just applies to market receivers? It is, Your Honor. And S & S is not a market receiver? That's correct, Your Honor. That section is under the section for records of market receivers. And as this court may know, PACA licenses producers or brokers or agents under certain sections. And that section deals with market receivers, which S & S Packing is not. S & S Packing is, was, a grower's agent. Right. Let me ask you this, Dow. But the records do require that you have to have good records, accurate records, right? Yes, sir. And so all the blueberries were sold to Sunbell? Yes, sir. Are there any documents in the record that reflects exactly how much money S & S got from Sunbell? Yes, sir. Yes, sir. Full and complete accounting of what S & S was paid by Sunbell. There's an invoice in the record? Sir? There's an invoice in the record for the total amount of money that you got from Sunbell for all the blueberries, all 13 growers. There's a full accounting and records of everything that S & S shipped and everything that Sunbell paid for those blueberries. And so profits are pooled and losses are pooled, right? Yes, sir. Okay. And you can subtract a commission of 8%? Yes, sir. That's what the contract provided for. Did you get an 8% commission for the blueberries that you grew yourself and sold to? Yes, sir. The commission was to be paid on the net sales price received by S & S. Okay. Is that standard in the industry? You get a commission for your own blueberries? Judge, I can't say if it's standard or not. We had a contract among these 14 growers for that year, and that was their arrangement. You've said in answer to Judge Wilson that the records show the totality of the sales by Sunbell on behalf of S & S. Where does that, what documents does that appear in? Those documents were all in evidence. They are documents produced by Sunbell, made a part of the record. I can do some research and try to come up with exactly what they're called, Judge Anderson, but they... I think they're called Sunbell's settlement sheets. Is that right? Perhaps so, yes, ma'am. All right. Before, in the proceeding, the original proceeding, were all of these documents produced? The judicial officer asked for more evidence, if I remember correctly, and did they get more evidence? Did that judicial officer actually get all of the documents? Did not, did not. They got a sampling of our records. As I understood, they were looking to see whether our records did comply with their regulations. So they did not request our full sales records, and they were not produced. That was not an issue raised in the initial complaint. The grower was complaining of certain deductions. The grower never complained that the sales prices were inaccurate. So PAC only requested a sampling, and that sampling was produced. Now, you referred to they asked for something more, and I don't know if they were ever satisfied with what they were looking for or not. But more records were produced in the district court. Is that right? Yes, ma'am. The full records were produced in the district court, in the district court trial. In the district court trial, we agreed in the pretrial order, which was approved by the court, we agreed that the issue before the court was whether the grower received what it was due under the contract. And so we offered and the court received, without objection, all of our records for all of those sales to show exactly what we got, what we packed, what we sold, what we got for it, and what we distributed to our growers, including Spring Lake in this case. So that was not before the secretary in that initial proceeding. It was offered and accepted in the district court trial. So the full records, the full accounting for everything was in the district court trial. I'm going to get you on a couple of matters. I'm not going to get you. I'm going to talk to you about a couple of matters. I'm going to move your attention to a couple of matters about your position that bothers me. Let me preface it by saying, and this is kind of an indication to your opponent that he needs to address this. I do think that your records that show the Sunbell settlement sheets show the total sales that Sunbell made for S&S for each particular week, and they show the units, they call them cases, in the settlement sheets, which are the same thing as a unit or a flat, as I understand it. Right, sir. And they show the amounts that Sunbell got when it sold it, and then it shows Sunbell's commission off of that and a couple of other little expenses and what came to S&S. It does not show the weight, but you can calculate the weight per pound because we know the weight of the several kinds of flats. We know a flat of 4.4 ounces weighs this much, a flat of 6 ounces weighs this much, and a flat of pints weighs this much, so you can calculate all of that. What bothers me about, the first thing that bothers me about your position is that you paid all of your growers, including Spring Lake, according to the number of flats they presented. It seems to me the contract is ambiguous as to whether you can do that. The district courts seem to assume that you were required to distribute on the basis of the number of pounds each grower contributed. Do you have a thought as to that? Is the contract ambiguous, and if it is, don't we have to remand to the district court to take parole evidence as to whether it permitted you to distribute amongst the growers per flat, I mean F-L-A-T, or per pound? Yes, sir. This was a pooling contract whereby the 14 growers were to receive their prorated share of whatever was received for those berries, and they were all paid the same depending upon what they had brought to be packed. So they were not paid by the pound, they were paid by the unit, by the flat, I think those different terms were used, but basically by the unit. Which is the same thing as a flat, is that right? Yes, sir. Okay, and the same thing as a case that's referred to in the Sunbell settlement. Yes, sir, I think so. Okay. Yes, sir. So because it was a pooling agreement and they were all to be paid the same based upon what they brought, then the specific weights were not relevant to— The contract really doesn't specify, though. It does not spell that out, it does not. Okay. Of course, that issue is a greatly subsidiary issue to what I think the error of the district court was that it defaulted to the market news prices. Yes, sir. My assessment of, and I didn't find a whole lot of law, but mostly common sense, indicates that only if the S&S records did not permit a court to ascertain what the actual price paid by the willing seller, Sunbell, to the willing buyers, whoever they sold to, only if your records did not permit at least a reasonable certainty, which the Florida law requires, permit the calculation or ascertaining the damages with reasonable certainty. Only if your records can't show with reasonable certainty what the actual price was that a willing seller sold to a willing buyer, only then would it be appropriate to default to the market news prices. Is that what you think the law is? Judge, I think it is. What case holds that? I haven't found it. Okay. I didn't find a case that I think that Ginecco case had some language that said that the best evidence should be used and where the actual records are available, that is the best evidence rather than the market news reports. You cite that in your brief? I do, yes, sir. And how do you spell that case? I think it's G-E-N-N-E-C-O. Okay. The other thing, if you permit me one more quick question, I think the district court was right and you were wrong on the commission idea that you can charge two commissions. The paragraph in the contract gives you a right to use your marketing partners, but it does not give you a right to hire commissioned agents and then pay a commission. I can't remember the number of it, but that regulation says that any charge for a commission like that has to be with the permission of the grower. It seems to me your contract does not give you permission to do more than use marketing partners. It doesn't give you permission to use a commissioned marketing partner and deduct that commission as well as your own. Tell me why I'm wrong on that. Well, I think you're wrong because the way the regulation is written, it talks about a grower's agent can use marketing partners and so forth with the permission of the grower. And it has to expressly approve that? Yes, sir. And your contract did not expressly, it allowed you to use marketing partners, but it did not expressly let you use commissioned marketing partners. I agree with that. It did not specifically so state. That's why I think you're wrong on the commission. Yes, sir. My time is up. All right. Thank you, Mr. Smith. Thank you, Your Honor. May it please the Court. My name is Marty Smith and I represent the Appalachee Spring Lake Blueberries. The decision by Judge Hodges below correctly applied the statutory and regulatory provisions of PACA and is due to be affirmed. One of the key provisions, in fact, the most key provision is found in the PACA statute itself. That is under 499 G.C., the reparation proceedings, that is the USDA proceedings, form a prima facie case for the facts found there. So as this case came up to Judge Hodges, the damages, the pricing, the records issue had been determined. Now, they got a trial de novo, but that established a prima facie case. As the trial court noted, the facts determined in the reparation proceeding would stand as established facts until sufficient evidence is produced at trial to overcome them. What's your authority for that? Again, 499 G, subparagraph C. And that tells us how much deference is due to the factual determinations of the Department of Agriculture? No, Your Honor, and I do not remember the case that Judge Hodges cited for that proposition. But in other words, look at the fact it's a prima facie case. That means the facts are determined, the facts are established. And can be rebutted. Has the ability, has the opportunity to come in with different facts, with more facts. Well, if the court below applied the wrong regulations, and if the judicial officer below didn't have all the documents, how much deference should the court have given, I mean, to the facts? First, as to the wrong regulations. I take issue with that because Well, this wasn't, the parties were not doing this on consignment, were they? Your Honor, that's a good question because the definition of consignment is to turn something over to somebody else to sell. Here, Well, then we'd never have a grower's agent by that definition. Well, no, Your Honor, because here's the circumstances in this case, which are, I think, very unique. There was no contractual relationship between S&S and Sunbelt. They simply turned the fruit over to Sunbelt. One of the key facts there is they did not know, S&S Packing did not know the price at which it was going to be sold. They made no effort to negotiate prices. They didn't even check prices to see if they were going to be obtaining a fair price. So, they use the term marketing partner. No, they're not a marketing partner. They're simply a broker, and it was turned over to them. No business arrangement whatsoever. Here it is. Now, there was a business arrangement between a related company. It had nothing to do, it's actually a grower that was owned by the same individual. There's no relationship there, and so they simply turned it over. That's just a consignment. So, but more importantly, Your Honor, that really doesn't get back to the fundamental thing, and that is S&S Packing, by the statutory provisions, is required to truly and correctly account and properly pay. Counsel, I'm going to get you right to the nitty-gritty. It seems to me that Sunbell's settlement sheets provide everything that the district court needed to find out what the actual price was that Sunbell sold those blueberries for. And let me preface it, it's my opinion tentatively, unless you can convince me I'm wrong, or my brother and sister can, that it would be justified to default to the market news prices only if you couldn't tell with reasonable certainty from S&S records what the actual sales price was that Sunbell sold those blueberries for, number one. Am I not right on that proposition? Your Honor, I think there's several propositions, so let me see if I can answer what I understand your question to be, and if I miss something, come back and ask me. With respect, let's start maybe with the back of it first, with respect to defaulting to market price. Right. Because I think that is obviously very important. That's the crucial question. Again, the decision by the judicial hearing officer stands as a prima facie case. I think it's just as wrong as it possibly can be. And furthermore, we got a de novo trial in the district court. And S&S Packing had every opportunity in the world to bring in whatever evidence they wanted of market price. They brought none. You're talking about in the judicial? No, in the district court. Okay, we're going to talk about that in a minute. Right now, I think they did in the settlement sheets, Sunbell settlement sheets. That is simply what they received. On the law, is it not true what I said about the law, namely that you would not be warranted in disregarding the actual sales price that Sunbell sold the berries for unless you couldn't tell what that price was? Your Honor, we need to go back to the contract itself. Because in that contract, S&S Packing contracted to sell the blueberries for the best price available. They were going to be the seller. Let's hold that aside. You didn't make that argument in the judicial officer. You did not make that argument in the district court. And you barely make it. You make it really for the first time in your reply brief. So hold that aside a minute. I'm going to just assume that that is the law that I said. Namely, you couldn't default from the actual sales price unless you can't tell what it is. Your Honor, the Sandia case that's cited in the materials to district court decision, that case reviewed a motion for summary judgment that had been filed based on a reparation order. That case said or says that because the moving party was seeking to obtain summary judgment for a reparation order that was based on market price just like this one. The trial court there said that there was an issue of fact between those two prices. The district court would have to make that determination as to which was more accurate. They did not say that they couldn't use that. What's the name of that case? Sandia. And it's cited in the briefs. Okay. I think it's even cited in Mr. Wiggins' brief. Okay. It's a New York case, I believe. And there they said that is a question of fact. It was a question of fact here, admittedly. If you look also on the same general area, the Limco case that's talked about quite a bit in the appellant's brief. In Limco, there was no reparation proceeding. So there was no question about any kind of presumptions or anything like that. But Limco brought in to testify a market expert. They brought in one of the other brokers. And they specifically found as a matter of fact that Limco had received the best price available. They had done their job. There's no evidence here of any attempt by S&S Packing to do anything other than just simply turn the blueberries over to somebody else. And it resulted in their records. And, you know, you go back to and you were asking also about the settlement sheets from SunBell. The SunBell settlement sheets show all of the blueberries. There's no differentiation between what Spring Lake produced or anybody else, including their own related companies. Well, they had a pooling agreement, didn't they? No. They had a pool pricing agreement. And that's different than pooling everything together. Pool pricing, as that term was used here, means that, and it's spelled out in the agreement, that for that week, everybody is going to be paid the same price. So you take the average of the week. That's also discussed in the Limco case because that is standard procedure in the vegetable or fruit marketing industry. Pool the prices for a week. Pool pricing is not the same thing, though, as pooled weighing because here's what happened in this case. And here's what supports the district court's determination. And you were asking this question before. By using the pooled weighing and paying, and I use the term pooled weighing. I don't think that's even necessarily a term. They sold Spring Lake's blueberries. We don't know what size flats they were put in. They were paid by the flat and they got the same price for nine pounds as another grower may have gotten for 3.4 or 3.6 pounds. So now we've got a small flat of blueberries, as you pointed out, packed in the small containers. That doesn't have anything to do. I agree that's a subsidiary issue in this case. But that doesn't have anything to do at all with the inability to find out from the records what price Sunbell got for the blueberries. And it seems to me I'm looking at a settlement sheet. I'm looking at a settlement sheet for a particular week. And it shows that there were 177 cases or flats of 4.4 ounce things. And it shows the total amount that S&S got. And it takes S&S's commission off and a few expenses. Why doesn't that give you the actual price that Sunbell got for all of the blueberries that week? It shows all of the blueberries that week. It does not show specifically the blueberries that were produced and packed for Spring Lake. I agree with that. But it shows you enough to know. Answer this question. It shows you enough to know what Sunbell got when it sold all the blueberries it had, does it not? It shows the price, shows the amount for all the blueberries. Okay, now if that's true, how can you justify not using that price as opposed to the market news price? Because it does not show how much was received for Spring Lake's blueberries. Again, their contract says they would invoice. Their contract says they'd sell for the best price. And we'll go back to I understand that. So your whole argument about everything really relies on that pooling means that they can't pool the way they did. They have to trace Spring Lake's blueberries all the way to Sunbell and then trace out how much Sunbell got, right? Correct, Your Honor, because that is what invoicing would require. That's what they agreed. And I want to make two points here if I may. Let me ask you this. What is the difference between that and between doing it just like he did in the sale to Sunbell, getting Sunbell's prices, and then distributing that in that particular week, it was $5,575.50. And in that week, if he distributed those dollars according to the pounds of blueberries that Spring Lake grew that week and all the other 14 growers grew that week, that would be exactly the same thing as tracing Spring Lake's blueberries through to Sunbell, would it not? No, because they were paid by the flat, not by the pound. I know, I know, but that If they had been paid by the pound, then we go back to, again, and I'd like to point this out. Section 499B4, which is part of the PACA statute, says that in addition to the violation for failing to keep adequate records, they also violated by failing to perform a specification or duty expressed or implied arising out of its relationship with Appalachian, that is Spring Lake. Statute requires them to, in other words, conform with their contract. Their contract said You didn't get the thrust of my question. You say there's a real difference between the pooling you wanted them to do that way and the pooling they actually did. And my question is, if S&S had distributed the money it actually got from Sunbell to the various growers by in proportion to the pounds of blueberries they contributed, each grower contributed, then that would be exactly the kind of pooling you're talking about, would it not? Your Honor, again, their records were so insufficient, the hearing officer and the trial court found that they were unreliable. You don't understand. I do understand, Judge. I don't think that's right, and I'm trying to tell you why I don't think it's right. Again, you're talking about Sunbell records, not S&S records. Yes. And S&S is the one that contracted to properly invoice and properly keep those records. And there's no reason they can't use Sunbell's records. They had every opportunity to do that at the trial, and then to present that, they did not. They just simply introduced it and said, here's what we got. They did not address the issue of, again, being able to trace that back. They also didn't address and still have never addressed the issue of their contract to obtain the best price when all they did was turn them over. That's why the price paid by Sunbell is not indicative, and the hearing officer had to go to the market news. They could have come in with other evidence of that. They did not. I cannot find that you made that argument before the judicial officer or the district court or in your blue brief. The argument that they failed to comply with their contract? That a justification for defaulting to the market news prices was because they did not use their best efforts. Again, Your Honor, I think that's inherent in there. But again, we go back to the fact that the use of the market news was prima facie evidence. It has been used in other PACA cases, including the Sandia case, where there was a question about the actual price. And the judicial hearing officer said that those records, including the records of Sunbell, were inadequate to determine that. They had every opportunity to present different pricing information. Again, you look at the Limeco case, they did that. I'm going to ask my presiding judge, I took so much of your time, I'm going to ask him if he would give a couple of three minutes. Sure, and I think Judge Rothstein has some additional questions as well. Okay. Counsel, how do you square the arguments you've just been giving with the Sugar Hill Blueberries case? That's an unreported decision, Your Honor. There were a lot of issues discussed in that case. It was not provided. I'm assuming the court may have gotten a copy of that. There were a lot of other issues being raised in that case. They didn't go to the market news prices. They were able to ascertain a price. And we don't have those records that were there before that court, or before that. And I'm at a little bit of a disadvantage. I was contacted by Sugar Hill, and I don't want to step over anything that may involve breach of what could have been a client relationship. It did not. But the bottom line is that's a different case, different hearing officer, different set of records. It's certainly a different hearing officer. But you have to admit, it's a very similar case. It's similar, but it involved a lot of other issues that were not before the district court in this case. It may have involved other issues, but they were able to arrive at a price without going to the market news price, right? And again, that could have been done with additional evidence here. But in fact, Mr. Mills' testimony was he didn't do anything to determine price. He just took whatever price came from Sunbell. And that's putting all of the trust in Sunbell. Sunbell didn't even come to testify in this case. They could have been brought in to testify to support what they paid.  Okay. Thank you. So there's no evidence of that to counter the Prima Facie case as to the use of those prices. And again, if you look at the other cases involving this where market news has been used, it was a question of fact. But again, without any contrary evidence, other than the unreliable evidence that they pointed out here, there wasn't anything else that could be done with that. I know that I'm on an extended time. Does the Court have any other questions? Does the panel have any other questions? We have no more questions. Thank you. Thank you, Your Honors. And Mr. Wiggins, I'm going to ask that Ms. Harper give you an additional three minutes if you need it. I think the only thing that I want to add is that there was no claim made in this case that S&S had failed to carry out their contract duty to obtain the best price. I know we've heard a lot of argument, but that was simply not a claim asserted at either level. Then simply comment on the responding to the Sugar Hill case that was tried before a hearing officer. It was an oral hearing. Witnesses testified. Documents were received. All of the records were received. And they were, in fact, the same records. This was another S&S grower. The cases were filed within the same week. One went the documentary procedure, the Spring Lake case. The other went the oral hearing procedure. That was the Sugar Hill case. So the same records came in to document all of the sales that were made and all of the prices that were received. So we think it's significant, and we think it's persuasive authority for the positions that we've tried to set out. Sugar Hill actually allowed the double commissions, did it not? Yes, sir. Yes, sir. But that case is not binding on us. It wasn't even, if it had come before, it would not have been binding even on the judicial officers. Judge, I think you're right. It's not binding, but I think it is persuasive authority. Can I just go back to clear up some confusion in my mind? It was my understanding, all of the growers come in with their lugs, and they weigh out how many pounds they're contributing to the big amount that's going to ultimately get sent to Sunbelt. When it comes back and you say they get paid by the flat, doesn't the number of pounds that they originally contributed control what they're getting paid or not? It's my understanding it did not. They were paid by the unit, by the flat. And the experience was that the unit, the flats, always weighed within a very narrow range. And so for purposes of their contract, they agreed that we're going to pool everything, and we're going to be paid by the unit. And so the actual weights really didn't enter into it. Well, how do you answer that hypothetical that, in fact, if you do it that way, because of the different clamshell sizes, there could be a distortion of the amount that a particular grower gets? That's right. Hypothetically, it could happen. It could be to a grower's advantage. It could be to a grower's disadvantage. But everybody was treated the same. Don't we need to send this case back after dealing with the market news price issue to, number one, determine whether the contract was violated when you distributed the Sunbell's monies amongst your 14 growers per flat as opposed to per pound? Don't we have to remand to determine that? Judge, it was not an issue raised. I thought the Spring Lake people did argue. They didn't argue a lot of what they argue now, but I thought they did argue that it should have been per pound. And the district court seemed to talk about it. It wasn't real clear, but he seemed to suggest it should have been per pound. Did they not argue per pound in the district court? Judge, I don't think so. I think they just argued that the court needed to affirm the hearing officer's ruling. Well, we'll look carefully at that. All right. Thank you, counsel. That concludes document number 16, and this court is adjourned. All rise. Tony, would you bring the rest of my things?